UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SHARI SIEBEL,                                                    Case No. 17-10827 j7

      Debtor.

YVETTE J. GONZALES,

      Plaintiff.

v.                                                                      Adv. No. 17-01054

GEER, WISSEL, LEVY
& HARTWELL, P.A.,

      Defendant.

## **OPINION**

Defendant, who represented Debtor in her divorce, had a large outstanding fee balance. To secure payment, Defendant filed certain "attorney charging liens" in the Bernalillo County records and the divorce action, purporting to encumber Debtor's house. When the house was sold as part of the divorce property division, Defendant was paid $111,071.71 at the closing, and released its liens. The Trustee argues that the charging liens were invalid, and that the $111,071.71 is avoidable as a preferential transfer. She asks for summary judgment on the lien validity issue. Defendant counters that the divorce court validated the charging liens, so relitigation of the issue is barred by the *Rooker-Feldman* doctrine. Defendant also asserts that it is entitled to summary judgment on the preference action because Debtor was solvent when the transfer occurred. The Court concludes that *Rooker-Feldman* does not apply, that the charging liens are invalid, and that Plaintiff is entitled to summary judgment on this issue. The Court further concludes that there are genuine fact issues

about Debtor's solvency, and about whether the "greater amount test"[1] can be met, so Defendant's summary judgment motion will be denied.

## I.   FACTS[2]

The Court finds that the following facts are not in genuine dispute:

On March 31, 2017, Debtor filed her chapter 7 case. Yvette J. Gonzales was appointed the chapter 7 trustee ("Trustee").

Pre-petition, Debtor hired Geer, Wissel, Levy & Hartwell, P.A. ("GWLH") to represent her in the divorce action styled *Michael Siebel v. Shari Seibel*, Case No. D-202-DM-2014-2797, pending in the Second Judicial District Court, Bernalillo County, New Mexico (the "Divorce Action"). The representation was memorialized by a written fee agreement, which makes no mention of a charging lien or mortgage to secure payment of GWLH's fees.

Debtor was not able to pay GWLH's fees. GWLH recorded the following "attorney's charging liens" with the Bernalillo County Clerk on the following dates:[3]

| Date | County Clerk Document Number | Claimed Lien Amount |
|------|------------------------------|---------------------|
| September 17, 2015 | 2015081415 | $22,334.38 |
| November 19, 2015 | 2015100873 | $44,874.64 |
| December 16, 2015 | 2015108903 | $49,247.97 |
| March 30, 2016 | 2016029636 | $62,973.82 |
| July 26, 2016 | 2016069220 | $91,983.83 |
| August 31, 2016 | 2016082736 | $103,853.62 |

Each lien contained a legal description of the house, and stated "This lien attaches to the

---

[1] I.e., § 547(b)(5).

[2] Some facts are taken from the docket in this case of which the Court takes judicial notice. *See St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (a court may sua sponte take judicial notice of its docket); *LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.)*, 196 F.3d 1, 8 (1st Cir. 1999) ("[t]he bankruptcy court appropriately took judicial notice of its own docket").

[3] The documents also were filed in the Divorce Action, on the dates indicated.

foregoing property for professional services rendered on behalf of Shari Seibel for her legal representation."

On November 1, 2016, the state court entered a Final Decree of Divorce and Findings of Fact & Conclusions in the Divorce Action (the "Final Decree"). The state court determined that:

- The house had been the marital residence from 1997 until the date of separation;
- All money used to buy, maintain, and pay taxes on the house was community property;
- Debtor constantly told her husband he was sick;
- Under pressure from Debtor, Mr. Siebel put all of the marital assets, including the house, in Debtor's name alone;
- Mr. Seibel put the house in Debtor's name in case he became unstable or sick;
- There were suspicious circumstances regarding the conveyance;
- Mr. Siebel was in a weakened mental state when he made the conveyance;
- Mr. Seibel received no consideration for the conveyance;
- The purported conveyance was contrary to community property laws, and was the result of undue influence;
- The conveyance was unnatural, given the level of conflict between the parties; and
- The house is still a community asset, despite the purported conveyance.

In the Final Decree, the state court reversed the conveyance and ordered:

> The residence shall be sold after Respondent/Wife moves out; any mortgages and other debts incurred prior to Petitioner/Husband's transfer to Respondent shall be paid out of the sale proceeds; provided that any liens, taxes, mortgages, or debts attaching to the property after Petitioner/Husband transferred his interest in the residence shall be paid for by Respondent/Wife's half interest. . . any and all proceeds remaining from the sale of the residence after payment of any mortgages, debts, other expenses, or re-distribution of assets, including closing costs and related closing fees, as discussed above, shall be divided equally by the parties.

The Final Decree ordered that the house be sold by June 1, 2017. Accordingly, Mr. Seibel and Debtor signed a contract to sell the house. On the day scheduled for closing, however, Mr. Seibel refused to sign the closing documents unless, inter alia, the attorney's charging liens were released without payment. Mr. Seibel's position angered Debtor (and probably GWLH), and Debtor filed a motion to compel Mr. Seibel to close. On March 3, 2017, the state court ordered:

- The closing on the sale of the house must be immediately concluded;

-3-

- All liens encumbering the house shall be paid; and
- After the payment of costs of sale and all encumbrances of record, the net proceeds as shown on the ALTA Settlement-Statement-Seller dated February 27, 2017, (approx. $149,754.28) shall be paid to the Registry of Court for Second Judicial District Court by First American Title Insurance Company.

The closing finally occurred on March 7, 2017. GWLH received $111,071.71 from Debtor's interest in the proceeds, and released the charging liens. Debtor filed this case 24 days later.

Debtor's bankruptcy schedules list total assets of $228,101.92 and total liabilities of $101,328.44. A bar date was fixed in this asset case. Proofs of claim totaling $187,673.12 have been filed. An additional $60,171 of claims were listed on Debtor's bankruptcy schedules, for which no proofs of claim were filed. No proofs of claim have been objected to.

## II.     DISCUSSION

### A.     Summary Judgment Standards.

Summary judgment is appropriate if the pleadings, discovery papers, admissions, and any affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Rule 56 applies in adversary proceedings. *See* Fed. R. Bankr. P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and ... [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant carries this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *F.D.I.C. v. Lockhaven Estates, LLC*, 918 F. Supp. 2d 1209, 1231 (D.N.M. 2012) (*citing Celotex*). Further, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990) (*citing Celotex*, 477 U.S. at 324). To deny a motion for

-4-

summary judgment, genuine fact issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A mere "scintilla" of evidence will not avoid summary judgment. *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 251; *Vitkus*, 11 F.3d at 1539.

B.      The *Rooker-Feldman* Doctrine Does Not Apply.

1.      The doctrine in general.

> The Rooker-Feldman doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment. Such jurisdiction is lacking because within the federal system, only the Supreme Court may review a state court judgment.

*Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2nd Cir. 1998). *See also Paulson v. Wein (In re Paulson)*, 477 B.R. 740, 743 (8th Cir. BAP 2012) ("The doctrine precludes a federal action if the relief in the federal action would effectively reverse the state court decision or void its holding"); *Kline v. Deutsche Bank Nat'l Trust Co. (In re Kline)*, 472 B.R. 98, 105 (10th Cir. BAP 2012) ("If success on the claims alleged in federal court would necessarily require the federal court to review and reject the state court's judgment, *Rooker-Feldman* applies.") (*citing PJ ex rel. Jensen v. Wagner*, 603 F.3d 1192, 1194 (10th Cir. 2010)).

"The Supreme Court has held that this doctrine is narrow: 'The *Rooker-Feldman* doctrine . . . is confined to cases . . . brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Brown v. Chappelle*, 659 Fed. Appx. 458, 459 n.1 (10th Cir. 2016), *quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284,

(2005).

>Following the *Exxon Mobil* decision, the United States Court of Appeals for the Tenth Circuit again emphasized the narrowness of the *Rooker-Feldman* doctrine. In *Campbell v. City of Spencer*, the Tenth Circuit held that when the state-court judgment is not itself at issue, the *Rooker-Feldman* doctrine does not prevent a suit in federal court regarding the same subject matter, or even the same claims, as those presented in the state-court action. *Rooker-Feldman* does not bar an action just because it seeks relief inconsistent with, or even ameliorative of, a state-court judgment. It bars claims complaining of injuries caused by wrongfully entered state-court judgments. As this Court has previously stated, when determining whether the *Rooker-Feldman* doctrine applies, "[t]he fundamental and appropriate question to ask is whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment."

*In re Flanders*, 2015 WL 4641697, at *5 (10th Cir. BAP), aff'd in part, remanded in part, *In re Flanders*, 657 Fed. Appx. 808 (10th Cir. 2016).

2.  <u>The state court did not rule on the validity of the charging liens</u>. The state court did not rule that GWLH's charging liens were valid. The Final Decree says in part that "any liens, taxes, mortgages, or debts attaching to the property after Petitioner/Husband transferred his interest in the residence shall be paid for by Respondent/Wife's half interest." This language cannot be fairly read as ruling that the charging liens are valid. Rather, the language leaves open the possibility that the liens are invalid, in which case they would not have attached to the house.

Similarly, the March 3, 2017, order compelling Mr. Seibel to close did not rule on the validity of the charging liens. The state court found that "closing on the sale of the marital home must be immediately concluded," and "[a]ll liens encumbering the property shall be paid." Finally, the court found that the net sales proceeds after payment of "all encumbrances of record" shall be paid into the court registry.

These court orders did not address the validity of the charging liens. Neither party ever challenged, briefed, or argued about such validity. The issue was never decided by the state court after a hearing on the merits.

3. <u>The Trustee is not bound by any state court ruling</u>. Further, the Trustee was not a party to the state court action, and is not bound by any ruling on the validity of the charging liens. For Chapter 5 claims like this preference action, a trustee does not "stand in the shoes of" the debtor.[4] In *In re Helms,* 467 B.R. 374 (W.D.N.C. 2012), the court stated:

> Conversely, when the Trustee seeks to avoid transfers of a debtor's property under Chapter 5, the Trustee is acting on behalf of creditors and is their representative. *See In re Worldcom, Inc.,* 401 B.R. 637, 650 (Bankr. S.D.N.Y. 2009) (citations omitted) ("[t]he trustee does not bring an avoidance action for the benefit of the debtor, but for the benefit of the estate's creditors"). On these occasions, the Trustee is not bound by the debtor's actions; nor is he the debtor's privy.

467 B.R. at 383. *See also In re Vaughan Company Realtors*, 2013 WL 960143, at *6 (Bankr. D.N.M.); *In re Fordu,* 209 B.R. 854, 863 (6th Cir. BAP 1997). The 10th Circuit "has repeatedly held that the *Rooker-Feldman* doctrine 'should not be applied against non-parties' to the state-court judgment." *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1234-35 (10th Cir. 2006), *citing Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103, 1109 (10th Cir. 2000). Thus, even if the state court had ruled on the validity of the charging liens (it did not), the Trustee would not be bound by the decision, and *Rooker-Feldman* would not bar a ruling on the issue.

C.     <u>The Charging Liens Were Not Valid Encumbrances</u>

> Attorneys have all the usual tools available to creditors to protect against defaults by their clients. For example, they can obtain mortgages on client real property or security interests in client personal property. Also, if a client fails to pay what is due, the attorney can file a claim in court and obtain a judgment lien. In addition, an attorney may assert a charging lien, a unique method of protecting attorneys.

*Sowder v. Sowder*, 127 N.M. 114, 116-17 (Ct. App. 1999). As set forth below, GWLH's liens were not valid under New Mexico law as attorney charging liens, judgment liens, statutory liens, or consensual liens.

---

[4] For what it is worth, Mr. Seibel, not Debtor, was the state court loser. Does *Rooker-Feldman* apply if the state court winner challenges the ruling in federal court?

Case 17-01054-t    Doc 29    Filed 04/23/18    Entered 04/23/18 16:46:33 Page 7 of 13

1.    The purported liens are not common law attorney charging liens. In New Mexico, "attorney charging liens are governed by common-law, equitable principles." *Philipbar v. Philipbar*, 127 N.M. 341, 344 (Ct. App. 1999), *citing Sowder v. Sowder*, 127 N.M. 114, 117 (Ct. App. 1999). The charging lien "provides an equitable remedy intended to protect attorneys from unscrupulous clients looking to evade their responsibility for attorney fees." *Id. citing Cherpelis*, 125 N.M. at 251. The attorney charging lien "is not a mortgage and it is not akin to any other statutorily recognized lien on real property such as a lis pendens." *Id*. at 345. There are four requirements for the imposition of an attorney charging lien:

> First, there must be a valid contract between the attorney and the client, although the contract need not be express. Second, there must be a judgment, or "fund," that resulted from the attorney's services. Third, the attorney must have given clear and unequivocal notice that he intends to assert a lien, and notice must be given to the "appropriate parties." Finally, the lien must be timely—notice of the lien must be given "before the proceeds [from] the judgment have been distributed."

*Computer One, Inc. v. Grisham & Lawless, P.A.*, 144 N.M. 424, 429 (S. Ct. 2008), citing *Sowder*. Here, the first, third, and fourth requirements are satisfied: there was a written contract between Debtor and GWLH; all parties had notice of the asserted liens; and the liens were timely filed.

The second requirement, however (i.e. that a judgment or fund must be recovered), is not satisfied. The "quintessential charging lien arises in a state lawsuit to recover money, e.g., a tort claim or breach of contract action. In such cases, success results in a specific fund of money, generated by the attorney's efforts." *In re Blue Jet, Inc.*, 2017 WL 785606, at *5 (Bankr. D.N.M.), *citing Cherpelis v. Cherpelis*, 125 N.M. 248, 250-51 (Ct. App. 1998) (attorney may recover fees from fund recovered by his efforts). "It is not enough . . . to support the imposition of a charging lien that an attorney has provided his services; the services must, in addition, produce a positive judgment or settlement for the client, since the lien will attach only to the tangible fruits of the services." *Sowder*, 127 N.M. at 1034, *citing Glickman v. Scherer*, 566 So. 2d 574, 575 (Fla. App.

1990). *See also Computer One v. Grisham & Lawless* 144 N.M. at 429 (*"a charging lien is asserted against the judgment or settlement fund arising from a lawsuit, not against the client; it is not an independent lawsuit"*). "If the attorney's work produces no fruit, then the attorney has no lien." *Sowder*, 127 N.M. at 117*, citing* 7 Am. Jur. 2d *Attorneys at Law* § 357 (1997). *See also Albuquerque Nat. Bank v. Albuquerque Ranch Estates, Inc*.*,* 101 N.M. 656, (S. Ct. 1984) (distinguishing between fund generated by client's resources and one generated by attorney's labor).

Debtor's community property interest in the house is not a "fund" GWLH generated for Debtor.[5] When GWLH began its representation, Debtor was the sole owner of the house. Then the representation ended, Debtor share ownership of the house with her ex-husband. If GWLH's work created a fund, it was something other than the house, which is Debtor's only assets allegedly encumbered with the attorney charging lien. The second requirement for a New Mexico common law attorney charging lien is not met in this case, so GWLH's asserted attorney charging lien fails.

2.        The purported liens were not judgment liens. GWLH's asserted liens are not judgment liens—no lawsuit was filed to collect the attorney fees owed, no judgment was entered, and GWLH did not obtain and record a transcript of judgment. *See* N.M.S.A. § 39-1-6.

3.        The purported liens were not statutory liens. There are a number of statutory liens under New Mexico law, including mechanic's liens, N.M.S.A. § 48-2-1 et seq; abstracters' liens, N.M.S.A. § 48-4-1 et seq.; threshing liens, N.M.S.A. § 48-5-1 et seq; harvester's liens, N.M.S.A. § 48-5A-1 et seq, and self-service storage liens, N.M.S.A. § 48-11-1 et seq. There is no statutory attorney charging lien. *See Computer One v. Grisham & Lawless*, 144 N.M. at 428 (no statutory attorney charging lien in New Mexico).

---

[5] The Court is not faulting GWLH for the result. From what the Court can gather, the state court's ruling was just and proper, and consistent with the facts GWLH had to deal with.

4.     <u>The purported liens were not mortgages or consensual liens</u>. Additionally, the liens cannot be mortgages or consensual liens, because all such conveyances must be signed "by the person transferring his title or interest in said real estate, or by his legal agent or attorney." N.M.S.A. § 47-1-5. To be effective as a consensual encumbrance, Debtor (and possibly Mr. Seibel) would have to have signed the instruments. *See also Kysar v. Amoco Production Co.,* 135 N.M. 767, 780 (S. Ct. 2004) (citing the statute and requiring easements to be signed by the land owner).

D.     Avoidable Preferential Transfers.

Section 547 of the Bankruptcy Code empowers the Trustee to avoid certain "preferential" transfers. *See* § 547(b). To be avoidable: 1) the debtor must have had an interest in the transferred property; 2) the transfer must be to or for the benefit of a creditor; 3) it must be on account of a debt owed by the debtor to the creditor before the transfer was made; 4) it must have been made when the debtor was insolvent; 5) it must have occurred within the preference period; and 6) it must have enabled the creditor to receive more than it otherwise would have, had the transfer not occurred and had the bankruptcy estate been liquidated under Chapter 7. *Brown v. KOT, Inc. (In Hertzler Halstead Hosp.),* 334 B.R. 276, 286 (Bankr. D. Kan. 2005) (citing *In re M & L Bus. Mach. Co., Inc.,* 84 F.3d 1330, 1339 (10th Cir. 1996)). The trustee bears the burden of proving every element by a preponderance of the evidence. *See* 11 U.S.C. § 547(g).

In this case, it is clear Debtor had an interest in the transferred funds; that the transfer benefited GWLH; that the transfer paid Debtor's debt to GWLH; and that the transfer occurred during the preference period. The other two tests, insolvency (§ 547(b)(3)) and the greater amount test (§ 547(b)(5)) are less clear.

1.     <u>Insolvency</u>. The Bankruptcy Code defines "insolvent" as:

(A) with reference to an entity[6] other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of--
    (i) property transferred, concealed, or removed with intent to hinder, delay, or defraud such entity's creditors; and
    (ii) property that may be exempted from property of the estate under section 522 of this title.

There is a presumption of insolvency during the 90 days before the bankruptcy filing date. § 547(f). This presumption can be enough to grant summary judgment. *See Sandoz v. Fred Wilson Drilling Co. (In re Emerald Oil Co.),* 695 F.2d 833, 835 (5th Cir. 1983) (bankruptcy court properly granted summary judgment on insolvency where the opposing party failed to sufficiently rebut the presumption); *Floyd v. Shindler (In re Rodriguez),* 204 B.R. 510, 517 (Bankr. S.D. Tex. 1995) (a trustee is not required to present evidence on insolvency unless a defendant presents some evidence to rebut the presumption).

Here, GWLH attempted to rebut the presumption by referring to Debtor's amended schedules, which show substantial balance sheet solvency on the petition date. The Trustee responded that the filed claims, plus the scheduled claims for which no claim had been filed, exceed the scheduled assets. That is correct. Based on the record to date, the Court finds that there are genuine fact issues about Debtor's solvency on March 7, 2017.

    2.    The "greater amount test." The § 547(b)(5) "targets what is deemed to be an improper economic benefit received by a creditor." Rafael I. Pardo, *On Proof of Preferential Effect*, 55 Ala. L. Rev. 281, 286 (2004). Section 547(b)(5) "defines that benefit, whereas the other four elements specify the circumstances under which the benefit must occur." *Id.*

A transfer is deemed preferential when a creditor enjoys a greater recovery on its claim than it would have if the transfer had not occurred and if recovery proceeded according to the order of distribution in a Chapter 7 case. Courts sometimes refer to this inquiry as the "greater amount test."

---

[6] "Entity" includes persons. § 101(15).

Case 17-01054-t    Doc 29    Filed 04/23/18    Entered 04/23/18 16:46:33 Page 11 of 13

*Id.* With respect to challenged transfers to unsecured creditors (like the one here, because the charging liens were invalid), the greater amount test is satisfied by showing that unsecured creditors would not be paid in full in a hypothetical chapter 7 liquidation. *See, e.g., Palmer Clay Products Co. v. Brown,* 297 U.S. 227, 229 (1936) (a pre-petition payment of 10% on an unsecured claim "will necessarily result in such creditor receiving a greater percentage than other creditors, if the distribution in bankruptcy is less than 100 percent"). If the bankruptcy estate is too small to pay unsecured claims in full, any pre-petition distribution to an unsecured creditor would enable that creditor to receive more than it would get had the transfer not been made. *See Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.),* 930 F.2d 458, 465 (6th Cir. 1991) ("Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor . . . who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation."). *See also Skehen v. Bare Bones Graphics (In re Sweet),* 2009 WL 485136, at *3 (Bankr. D.N.M.) ("unless there are sufficient assets to pay all unsecured claims in full, the transfer . . . would enable [the unsecured creditor] to receive more than it would otherwise be entitled to receive . . .").

The petition date is the relevant date for the greater amount test. *In re Castletons, Inc.,* 990 F.2d 551, 554 (10th Cir. 1993). The value of the challenged asset is included to determine the expected distribution to creditors in a Chapter 7 liquidation. *See In re Connolly North America, LLC*, 398 B.R. 564, 571 (Bankr. E.D. Mich. 2008) (the court determines the liquidation value of the bankruptcy estate assets on the petition date, and adds the value of the allegedly preferential transfer).

Other than referring to Debtor's bankruptcy schedules, GWLH provided no evidence in support of its argument that the greater amount test cannot be met. The Trustee's response has a

similar lack of evidence on this issue. Given the uncertainties in Debtor's schedules,[7] the uncertainty about Debtor's solvency, and the general thinness of the current record, the Court concludes that there are genuine fact issues about the greater amount test.

### III. CONCLUSION

The Court concludes that *Rooker-Feldman* does not prevent it from ruling on the validity of the charging liens, and that the liens are invalid. The Trustee's motion for summary judgment therefore will be granted. There are genuine fact issues about Debtor's solvency, and about the results of the greater amount test, so the Court will deny GWLH's summary judgment motion on the preference claim. The Court will enter separate orders.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered: April 23, 2018

Copies to: counsel of record

---

[7] Six of the assets and 19 of the debts are listed as "unknown" in value or amount.