UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

SHARI SIEBEL,                                                  Case No. 17-10827 j7

     Debtor.

YVETTE J. GONZALES,

     Plaintiff,

v.                                                                        Adv. No. 17-01054

GEER, WISSEL, LEVY
& HARTWELL, P.A.,

     Defendant.

## **OPINION**

The Court is asked to reconsider its ruling that Defendant's charging lien, asserted against Debtor's interest in her former marital home, is invalid.[1] The Court has reviewed Defendant's arguments in support of its motion to reconsider, and concludes that reconsideration is not warranted. The motion therefore will be denied.

A.     The Challenged Order Is Interlocutory.

The Court's order, which denied cross-motions for summary judgment and Defendant's motion to dismiss, is interlocutory. *See, e.g., C and M Properties, LLC v. Burbidge, et a; (In re C and M Properties, L.L.C.),* 563 F.3d 1156, 1162 (10th Cir. 2009) (most orders denying summary

---

[1] *Gonzales v. Geer, Wissel, Levy & Hartwell, P.A. (In re Siebel)*, 2018 WL 1935828 (Bankr. D.N.M.). Defendant represented Debtor in her divorce. Debtor's husband deeded the house to Debtor. After much litigation, the state court, inter alia, set aside the conveyance, ordered the house sold, and ordered the net proceeds to be divided equally. Defendant asserted a charging lien on Debtor's remaining one-half interest in the house, securing $103,000 in unpaid attorney fees. In the Court's prior opinion, it ruled that the charging lien was invalid because Debtor's half interest in the house was not the type of "fund" generated by legal work that is required for a valid New Mexico charging lien.

judgment are interlocutory); *Wagoner v. Wagoner,* 938 F.2d 1120, 1122 n. 1 (10th Cir. 1991) (order denying a motion for summary judgment is not a final, appealable order); *Hunt v. Green,* 376 F. Supp. 2d 1043, 1050 (D.N.M. 2005) (citing *Wagoner*).

B.    Standards for Reviewing Motions to Reconsider Interlocutory Orders.

The standard for reviewing motions to reconsider interlocutory orders is different than for final orders. *See, e.g., Estate of Jacoby v. Nancy Akbari-Shahmirzadi (In re Akbari-Shahmirzadi),* 2013 WL 1099794, at *3 (Bankr. D.N.M. 2013) (discussing the different standards and citing cases). Rules[2] 59 and 60 govern reconsideration of final orders and judgments. *Id.* at *4-5. Grounds warranting reconsideration under those rules include, inter alia, an intervening change in controlling law, newly discovered evidence, and the need to correct clear error or prevent manifest injustice. *Schlecht v. Lockheed Martin, Corp.,* 626 Fed. App'x 775, 778 (10th Cir. 2015) (listing these grounds for reconsideration under Rule 59(e)); *Wright v. Hickman,* 36 Fed. App'x 395, 400 (10th Cir. 2002) (citing Rule 60(b) standards of an excusable litigation mistake or a substantive mistake of law or fact in the final judgment or order).

Rule 54(b) provides the mechanism for reconsidering interlocutory orders. It states that an order adjudicating fewer than all claims of all parties "may be revised at any time before the entry of a judgment . . . ." *See also Raytheon Constructors, Inc. v. ASARCO, Inc.,* 368 F.3d 1214, 1217 (10th Cir. 2003) (Rule 54, not Rule 60, provides the basis for reconsidering interlocutory orders); *C & A Const. Co. v. DHC Dev.,* 501 Fed. App'x 763, 779 (10th Cir. 2012) (citing Rule 54); *Trujillo v. Board of Educ. of Albuquerque Public Schools,* 212 Fed. App'x 760, 765 (10th Cir. 2007) (same).

---

[2] "Rule" refers to the Federal Rules of Civil Procedure, while "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

-2-

While most courts acknowledge that Rules 59 and 60 do not apply to interlocutory orders, they disagree about the standard to use when reconsidering such orders. Some courts apply a strict standard of review, which parallels the Rule 59 analysis. *See, e.g., Shervington v. Village of Piermont,* 732 F. Supp. 2d 423, 425 (S.D.N.Y. 2010) (grounds justifying reconsideration under Rule 54(b) are similar to those under Rule 59); *Lancer Ins. Co. v. Malco Enter. of Nevada, Inc.*, 2012 WL 2886708, at *1 (D. Utah 2012) (Rule 59(e) analysis used to decide a motion to reconsider); *Sump v. Fingerhut, Inc.*, 208 F.R.D. 324, 327 (D. Kan. 2002) (while Rule 59(e) does not apply to interlocutory orders, the standards established under that rule would be used); *Naylor Farms, Inc. v. Anadarko OGC Co.*, 2011 WL 7053794, at *1 (W.D. Okla. 2011) (applying Rule 59(e) to a motion to reconsider an interlocutory order).

Other courts rely on their general discretionary authority to reconsider non-final orders as appropriate, or as justice requires. *See, e.g., Friedman v. Dollar Thrifty Automotive Group, Inc.,* 2015 WL 8479746, at *2 (D. Colo. 2015) ("In deciding a motion to reconsider an interlocutory order, the court is not bound by the stricter standards for considering a Rule 59(e) or 60(b) motion.… Instead, a court has plenary power to revisit and amend interlocutory orders as justice requires"); *Trujillo v. Board of Education of the Albuquerque Public Schools*, 470 F. Supp. 2d 1270, 1275 (D.N.M. 2005), *aff'd and remanded on other grounds*, 212 Fed. App'x 760 (10th Cir. 2007) (applying the discretionary standard and determining that it was in the interests of justice to grant the motion); *Stoffels ex rel. SBC Telephone Concession Plan v. SBC Communications,* 677

F.3d 720, 728-29 (5th Cir. 2012) ("[A] trial court is free to reconsider and reverse interlocutory orders for any reason it deems sufficient….") (quotations omitted).[3]

The Court believes the discretionary standard is more consistent with Tenth Circuit law. *See Raytheon v. ASARCO,* 368 F.3d at 1217 ("The district court was incorrect to treat Raytheon's motion for reconsideration under Rule 60(b), which only applies to final orders or judgments."); *Trujillo v. Board of Educ.*, 212 Fed. App'x at 765 ("The district court … had the general discretionary authority to review its [non-final] order … and … was not bound by the stricter standards for considering a Rule 59(e) or Rule 60(b) motion."). The Court therefore will not apply any particular test or set of factors in reviewing the motion to reconsider. In general, however, the Court will be skeptical of "rehash" arguments. The Court may also deny a motion to reconsider in the interests of fairness and finality, if the legal arguments or evidence could have been presented in the original motion but were not. Finally, the movant's facts and arguments in support of reconsideration typically must be strong for the Court to change its ruling.

C. <u>Defendants' Argument that the Court Improperly "Reversed" the State Court is Without Merit</u>.

Defendant asks the Court to reconsider its ruling because invalidating the charging lien "would effectively and improperly overturn or nullify" a divorce court order. Elsewhere, Defendant asserts that invalidating the charging lien would "reverse" the state court. This seems

---

[3] *See also Elephant Butte Irrigation Dist. v. United States Dep't of Interior,* 538 F.3d 1299, 1306 (10th Cir. 2008) (under Rule 54(b), "'every order short of a final decree is subject to reopening at the discretion of the district judge'") (quoting *Price v. Philpot,* 420 F.3d 1158, 1167 n. 9 (10th Cir. 2005)); Rule 60(b), Advisory Committee Notes accompanying the 1946 Amendment ("Interlocutory judgments . . . are left subject to the complete power of the court rendering them to afford such relief from them as justice requires.").

-4-

to be a reiteration of the argument, made previously and rejected, that the *Rooker-Feldman*[4] doctrine prevents the Court from reviewing the charging lien's validity.

The Court ruled that *Rooker-Feldman* does not bar Plaintiff's challenge to the charging liens because, inter alia, she was not the "state court loser." In addition, *Rooker-Feldman* does not apply because Plaintiff does not seek to reverse, set aside, or invalidate a state court judgment or order.

1. <u>Plaintiff was not the state court loser</u>. To the extent the state court ruled on the validity of Defendant's charging lien (it did not), the state court loser was Mr. Seibel. Debtor, represented by Defendant, was the state court winner. Plaintiff was not a party[5] and was not, in any event, the state court loser or his privy.

2. <u>Plaintiff does not seek to set aside a state court judgment or order</u>. Further, Plaintiff has not asked the Court to invalidate any state court judgment or order, so *Rooker-Feldman* does not apply. In *Bolden v. City of Topeka, Kan.,* 441 F.3d 1129 (10th Cir. 2006), the Tenth Circuit held:

> *Rooker–Feldman* does not bar federal-court claims that would be identical even had there been no state-court judgment; that is, claims that do not rest on any allegation concerning the state-court proceedings or judgment. A suit on such claims could not be characterized as an "appeal" of the state-court judgment, which is the core concern of *Rooker–Feldman*. To illustrate, say a father was deprived of custody of his child by a state-court judgment. If he files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by *Rooker–Feldman*; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it seeks to set aside the judgment based on a review of the prior proceedings. If, however, the father simply brought

---

[4] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *D.C. Court of Appeals v. Feldman,* 460 U.S. 462, 486–87 (1983).

[5] As the Court held previously, Plaintiff does not "stand in the shoes" of Debtor, and is not Debtor's privy. *See In re Helms,* 467 B.R. 374, 381-82 (W.D.N.C. 2012); *In re Vaughan Company Realtors*, 2013 WL 960143, at *6 (Bankr. D.N.M.); *Corzin v. Fordu (In re Fordu),* 209 B.R. 854, 863 (6th Cir. BAP 1997).

-5-

suit in federal court seeking custody of his child, without raising any complaint about the state-court proceedings, *Rooker–Feldman* cannot be invoked; his federal claim would have been the same even in the absence of the state-court judgment. A myriad of doctrines, including res judicata, would almost certainly bar the suit. But because he is not seeking to overturn the state-court judgment, *Rooker–Feldman* is inapplicable, regardless of whether a favorable judgment in federal court would be inconsistent with that judgment and would "den[y] a legal conclusion that [the] state court has reached." *Exxon Mobil,* 125 S. Ct. at 1527 (internal quotation marks omitted).

441 F.3d at 1145. *See also Jester v. Wells Fargo Bank N.A.*, 2018 WL 1414843, at *4 (E.D. Okla.) (citing *Bolden*). Plaintiff's complaint never mentions the state court's Final Decree,[6] Emergency Order,[7] or other judgment or order. Plaintiff does not ask the Court to reverse, set aside, or invalidate any such judgment or order. Under *Bolden's* binding precedent, therefore, *Rooker-Feldman* does not apply.

      3.    <u>Preclusion principles do not bar the action</u>. Although it does not mention preclusion principles, Defendant perhaps intended to assert that Plaintiff's attack on the charging lien is barred under such principles. If so, the argument fails.

          a.    <u>State law governs the preclusive effect of state court judgments</u>. 28 U.S.C. § 1738 provides in part:

> The records and judicial proceedings of any court of any . . . State . . . , or copies thereof, shall be proved or admitted in other courts within the United States . . . by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
>
> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.

---

[6] The Final Decree of Divorce and Findings of Fact & Conclusions of Law, entered in the divorce action on November 1, 2016.

[7] The Order on Respondent's Emergency Motion, entered in the divorce action on March 3, 2017, granting Debtor's Emergency Motion to Compel Petitioner to Comply with the Final Decree Regarding the Sale of the Residence and for Sanctions.

As stated in *Strickland v. City of Albuquerque*, 130 F.3d 1408 (10th Cir. 1997), this provision "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the state courts from which they emerged." 130 F.3d at 1411, citing *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461 (1982); *see also Flanders v. West (In re Flanders),* 657 Fed. App'x 808, 821 (10th Cir. 2016) (state law principles governing issue preclusion apply in bankruptcy cases); *Rally Hill Prod. Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) (same).

    b. <u>Claim preclusion</u>. Claim preclusion[8] bars re-litigation of any claims that were or could have been adjudicated in a prior proceeding. *Brannock v. Lotus Fund*, 367 P.3d 888 (N.M. App. 2015).

> In order to bar a lawsuit under the doctrine of res judicata, four elements must be met: (1) identity of parties or privies, (2) identity of capacity or character of persons for or against whom the claim is made, (3) the same cause of action, and (4) the same subject matter.

367 P.3d at 896, quoting *Roybal v. Lujan de la Fuente,* 147 N.M. 193, 198 (Ct. App. 2009).

> In evaluating what constitutes the same claim for purposes of res judicata, we apply the transactional approach. *See Moffat v. Branch,* 2005–NMCA–103, ¶ 17, 138 N.M. 224, 118 P.3d 732. Under this approach, we consider three factors: "(1) the relatedness of the facts in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient unit for trial purposes; and (3) whether the treatment of the facts as a single unit conforms to the parties' expectations or business understanding or usage." *Bank of Santa Fe,* 2002–NMCA–014, ¶ 16, 131 N.M. 537, 40 P.3d 442 (internal quotation marks omitted) (quoting *Anaya,* 1996–NMCA–092, ¶ 12, 122 N.M. 326, 924 P.2d 735).

147 N.M. at 198. "Res judicata precludes a claim when there has been a full and fair opportunity to litigate issues arising out of that claim." *Bank of Santa Fe v. Marcy Plaza Associates*, 131 N.M. 537, 540 (Ct. App. 2001), citing *Myers v. Olson*, 100 N.M. 745, 747 (S. Ct. 1984).

---

[8] Also known as res judicata. *See Potter v. Pierce*, 342 P.3d 54, 57 (N.M. 2015).

Here, the parties are not identical, the causes of action are not the same, the subject matter of the two proceedings is different, and there was no opportunity to fully and fairly litigate the issue of lien validity. Claim preclusion therefore does not apply.

        c.      Issue preclusion. Issue preclusion[9] prevents relitigation of "ultimate facts or issues actually and necessarily decided in a prior suit." *International Paper Co. v. Farrar,* 102 N.M. 739, 741 (S. Ct. 1985) (quoting *Adams v. United Steelworkers,* 97 N.M. 369, 373 (S. Ct. 1982)). To invoke the doctrine, a party must show: "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation." *Shovelin v. Cent. N.M. Elec. Co-op., Inc.,* 115 N.M. 293, 297 (S. Ct. 1993). "The doctrine[] appl[ies] equally to issues of fact and rulings of law." *SIL–FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1521 (10th Cir. 1990). Issue preclusion can be resolved through a Rule 12(b)(6) motion to dismiss if its application is clear from the prior pleadings. *See Merswin v. Williams Cos., Inc.,* 364 Fed. App'x 438, 441 (10th Cir. 2010) (district court did not err in taking judicial notice of prior pleadings and ruling on preclusion principles in a Rule 12(b)(6) motion).

Here, the "issue" to be precluded is the validity of Defendant's charging lien. Defendant may not invoke issue preclusion because only one of the four required elements is present.

        i.      Plaintiff was not a party to the divorce action. Plaintiff was not a party to the divorce proceeding, nor does she "stand in the shoes" of such a party.

---

[9] Also known as collateral estoppel. *See, e.g., Deflon v. Sawyers,* 139 N.M. 637, 642 (S. Ct. 2006).

ii. <u>This proceeding is different from the divorce action</u>. The second element is satisfied; the divorce action involved many issues of law and fact, but it did not deal with avoidance of a preferential transfer under 11 U.S.C. § 547(b).

iii. <u>Validity of the charging lien was not actually litigated</u>. The Defendant has not shown that the validity of the charging lien was actually litigated in the divorce proceeding. The current record gives no indication that the issue was raised by either party. Debtor alleged in the Emergency Motion that "When Michael Seibel arrived at Frist [sic] American Title on February 28, 2017, he informed Title Officer Jenny Montoya that he refused to sign the closing documents unless all liens which include Joyce Gentry's attorney charging liens, Geer Wissel Levy & Hartwell, PA attorney charging lien and the IRS lien, on the property were released prior to his signing; he then left without signing." Mr. Seibel never responded to the allegation, and the Emergency Order was entered the next day.

Debtor's allegation implies that Mr. Seibel's refusal to close was not because he thought the liens were invalid, but because he was prompted by obstinance, bad faith, or a change of heart about selling the house. No briefs were filed on the issues of lien validity, no hearings were held, and no pleadings were exchanged. New Mexico law on attorney charging liens was never analyzed, argued, or ruled on.

iv. <u>Lien validity was not necessarily determined</u>. The state court never issued any ruling or decision that Defendant's charging lien was valid. The Final Decree states, in part, that "any liens, taxes, mortgages, or debts attaching to the property after Petitioner/Husband transferred his interest in the residence shall be paid for by Respondent/Wife's half interest." This language cannot be fairly read as ruling that Defendant's charging lien is valid. It only orders the payment of *valid* liens (i.e., liens that attach), without ruling on which liens are valid.

-9-

Similarly, the Emergency Order did not hold that Defendant's charging lien was valid. The state court found that "closing on the sale of the marital home must be immediately concluded," and that "[a]ll liens encumbering the property shall be paid."[10] The court also ordered that the net sales proceeds after payment of "all encumbrances of record" shall be paid into the court registry.[11] The Emergency Order shows that the state court was impatient with Mr. Seibel for refusing to close on the house sale. The state court apparently viewed Mr. Seibel's actions as uncooperative rather than based on any objection to the validity of any lien. The Emergency Order did not overrule any objection to Defendant's charging lien, because no such objection was made.

D. <u>Defendant's Argument that Avoiding the Charging Lien is Contrary to Public Policy and Creates Manifest Injustice is Without Merit</u>.

Defendant also asks the Court to reconsider its ruling because it "effectively rules that attorneys may not assert charging liens in divorce cases and that charging liens cannot attach to the proceeds of liquidation of marital property." Defendant also asserts that "the unavoidable result of the Order is the unwillingness of divorce attorneys in New Mexico to take on clients who lack the liquid funds to pay for legal services upfront. This will severely limit New Mexico residents' access to legal representation in matter that are frequently contentious and complicated."

These arguments are unpersuasive for a number of reasons. First, divorce clients may grant liens on their interest in marital assets to secure payment of attorney fees. Here, for example, Debtor was the sole owner of the house, and could have mortgaged it to Defendant. For reasons unknown to the Court, Defendant instead chose to assert a nonconsensual charging lien on the house.

---

[10] Paragraph 4 of the Emergency Order. As this Court has held, the charging liens did *not* encumber the house. Thus, under the terms of this paragraph, the charging lien should not have been paid.
[11] Paragraph 5 of the Emergency Order.

-10-

Second, the Court did not hold that charging liens can never be asserted in divorce cases. Rather, the Court applied the New Mexico law on charging liens to the facts of this case, and found one of the elements lacking. The Court did not attempt to broaden the scope of the ruling to all divorce cases, nor should it. *See, e.g., Esquibel v. Esquibel*, 2016 WL 4939391 (N.M. App.) (New Mexico Court of Appeals upheld a charging lien on a $100,000 "equalization payment" the wife obtained as part of a marital settlement).

If the elements of a New Mexico common law charging lien are satisfied, the type of lawsuit is not critical. In particular, if a divorce lawyer's efforts in a divorce action create a "fund,"[12] then a charging lien may be asserted.[13] The Court's ruling that Debtor's one-half interest in the house was not such a fund is based in part on the fact that, before the divorce, Debtor was the sole owner of the house. After paying more than $108,000 in attorney fees, Debtor's interest was reduced by half. Debtor's remaining half interest was not a "fund" generated by Defendant's legal work.

Third, Defendant seems to argue that every divorce lawyer is entitled to assert a charging lien on her client's liquidated marital assets, whether or not those assets are the "tangible fruits" of the lawyer's services.[14] That argument goes too far. Can transactional attorneys assert charging liens on the purchased businesses and real estate of their clients? Can collection attorneys assert charging liens on the principal balance of loans they collect for their clients? Can foreclosure

---

[12] *Computer One, Inc. v. Grisham & Lawless, P.A.,* 144 N.M. 424, 429 (S. Ct. 2008), citing *Sowder v. Sowder,* 127 N.M. 114, 116-17 (Ct. App. 1999).

[13] *See Esquibel v. Esquibel.* Query whether Mr. Seibel's divorce attorney's created the required "fund," since she recovered one half of the interest in the house for Mr. Seibel.

[14] *Sowder*, 127 N.M. at 1034. "If the attorney's work produces no fruit, then the attorney has no lien." *Sowder*, 127 N.M. at 117*, citing* 7 Am. Jur. 2d *Attorneys at Law* § 357 (1997). *See also Albuquerque Nat. Bank v. Albuquerque Ranch Estates, Inc.,* 101 N.M. 656, 657 (S. Ct. 1984) (escrow fund consisting entirely of payments made by the client is not the type of fund "recovered by" attorney's efforts, so the asserted charging lien fails).

-11-

attorneys assert liens on the foreclosed property? What about bond lawyers, water rights lawyers, and regulatory lawyers? All legal work, presumably, results in some benefit to the client. That does not mean that there is always some "tangible fruit" that can be liened by the attorney.

The contours and limits of New Mexico's common law charging lien doctrine, created to protect attorneys bringing tort and contract claims, are ill-defined. The Court has not attempted to define them in this proceeding. Rather, it simply ruled that Debtor's reduced interest in her house was not the type of "fund" required for a New Mexico charging lien.

## CONCLUSION

Defendant did not show that the Court should reconsider its ruling on the motion to dismiss. Defendant's motion to reconsider will be denied. A separate order will be entered.

／s／ David T. Thuma
David T. Thuma
United States Bankruptcy Judge

Entered: May 17, 2018.

Copies to: counsel of record